## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN FINLEY** and<br>**JESSICA FINLEY**, | ) <br> ) <br> ) | Case No. |
| Plaintiffs, | ) <br> ) | |
| vs. | ) <br> ) | **COMPLAINT FOR** |
| **OCWEN LOAN SERVICING, LLC,**<br>and, **HSBC BANK USA, N.A.,** AS<br>TRUSTEE FOR OWNIT<br>MORTGAGE LOAN TRUST<br>MORTGAGE LOAN<br>ASSET-BACKED CERTIFICATES,<br>SERIES 2005-4**,** and, **MANLEY**<br>**DEAS KOCHALSKI LLC,** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **DAMAGES AND JURY**<br>**DEMAND** |
| Defendants. | ) <br> ) | |

## COMPLAINT

Plaintiffs, Brian Finley and Jessica Finley, f/k/a Jessica Perez, through counsel, for their complaint against Defendants Ocwen Loan Servicing, LLC, HSBC Bank USA, N.A., and Manley Deas Kochalski LLC, state:

### WHY PLAINTIFFS ARE FILING THIS CASE

1.     Plaintiffs find themselves in dire straits. As a direct and proximate result of the incompetence and arrogance of Ocwen Loan Servicing, LLC and its law firm, Brian and Jessica Finley have for over seven (7) years faced the real

possibility of losing their home through no fault of their own. The Finleys have honored their contractual obligations and have repeatedly tried to work with their mortgage loan servicer to bring their loan current. They both believe, strongly, that one's word is one's bond and that a contract is a promise inviolate. The corporation that services their loan does not. Detailed *infra*, that corporate loan servicer has callously dismissed contractual obligations, run roughshod over a family that simply wanted to make its mortgage payments, made repeated and baseless threats, and ultimately wrongfully filed a state court foreclosure action, which it sheepishly had its attorneys withdraw once the Finleys hired their own lawyers and challenged the claims made. All this has had a predictable, devastating impact on folks who merely wanted to save their home. Even since the dismissal of the foreclosure, sincere efforts by the Finleys to have Ocwen correct its mistakes have been met with callous indifference, deceit, and simple lack of good faith and fair dealing. To save their home, Plaintiffs bring this case.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiffs, Brian Finley ("Brian") and Jessica Finley ("Jessica") (collectively "Plaintiffs" or the "Finleys"), are the owners of the home at 6210 Laverne Avenue, Parma, Ohio 44129 (the "Home").

3. Brian and Jessica have lived in and maintained the Home as their primary, principal residence since purchasing the residence on June 17, 2005.

4. In order to buy the Home, on June 17, 2005, Brian and Jessica[1] borrowed money and executed a note in the amount of $96,000 payable to Ownit Mortgage Solutions, Inc. (the "Note"). To secure payment of that Note, Brian and Jessica granted a contemporaneous mortgage lien on their Home (the "Mortgage"). The Note and Mortgage are collectively referred to herein as the "Loan." A copy of the Loan is attached as ***Exhibit A***.

5. The Loan has exceptionally egregious terms: interest only payments, an adjustable rate, and no escrow account for the payment of taxes and insurance. In short, it was a bad loan.

6. Defendant HSBC Bank USA, N.A., as Trustee for Ownit Mortgage Loan Trust Mortgage Loan Asset-Backed Certificates Series 2005-4 ("HSBC"), is the present owner and holder of the Loan.

7. Litton Loan Servicing, L.P. ("Litton") initially acted as the agent of and mortgage loan servicer for the Loan on behalf of HSBC.

---

[1] At the time of purchase, Brian and Jessica were not married. Jessica executed documents related to the purchase, including the subject note and mortgage, in her maiden name, Jessica Perez. The couple were subsequently married.

8.     Defendant Ocwen Loan Servicing, LLC ("Ocwen") is the current servicer of the Loan, having acquired Litton on June 5, 2011.

9.     Ocwen is a wholly owned and operated subsidiary of Ocwen Financial Corporation and is a limited liability company incorporated under the laws of the State of Delaware.

10.     Ocwen is registered to do business with the Ohio Secretary of State and maintains its principal place of business at 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409.

11.     At all times relevant herein, Ocwen acted and acts as the agent of and loan servicer for HSBC. As a loan servicer, Ocwen is a partial assignee of the Loan.

12.     Defendant Manley Deas Kochalski LLC ("MDK") is an Ohio limited liability company which has members and employees engaged in the practice of law in the State of Ohio.

13.     MDK was the agent and attorney for HSBC and Ocwen with respect to conduct discussed *infra*.

14.     Jurisdiction is conferred by 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"),

the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq*. ("RESPA")

and the Fair Debt Collection Practices Act, 12 U.S.C. §§1692, *et seq*. ("FDCPA").

15.     This action is brought to enforce regulations promulgated by the

Consumer Financial Protection Bureau ("CFPB") that became effective on January

10, 2014, specifically, 12 C.F.R. §§1024.35, 1024.36, and 1024.41 of Regulation

X. Additionally, this action seeks relief pursuant to the FDCPA.

16.     This Court has supplemental jurisdiction to hear all state law statutory

and common law claims pursuant to 28 U.S.C. §1367.

17.     Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a

substantial part of the events or omissions giving rise to the claims asserted herein

occurred, or a substantial part of property that is the subject of the action, is in this

District.

## SUMMARY OF CLAIMS

18.     In January 2013, the CFPB issued a number of final rules concerning

mortgage markets in the United States, pursuant to the DFA, Public Law No.

111-203, 124 Stat. 1376 (2010).

19.     Specifically, on January 17, 2013, the CFPB issued RESPA

(Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R.

10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

20.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. §1024.2(b).

21.     Ocwen is subject to these Regulations X and Z and does not qualify for an exception for "small servicers", as defined in 12 C.F.R. §1026.41(e)(4), nor the exemption for a "qualified lender", as defined in 12 C.F.R. §617.700.

22.     Brian and Jessica assert claims for relief against Ocwen for violations of the specific rules set forth in Regulations X and Z and the FDCPA, as set forth, *infra*.

23.     Brian and Jessica assert a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) and the FDCPA, and any such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

24.     Brian and Jessica also assert a common law claim for breach of contract and a statutory claim for violation of the Ohio Consumer Sales Practices Act, O.R.C. §1345, *et seq.*

**LOAN LOSS MITIGATION AND BANKRUPTCY**

25.     In 2007, Brian and Jessica encountered financial difficulties and reached out to to their servicer at the time, Litton, for loss mitigation assistance.

What followed was an agreed modification, a foreclosure when that modification proved unhelpful, a second foreclosure, a dismissal of that case followed by a second loan modification. During this time, Brian and Jessica did everything in their power to retain their Home and repeatedly worked with Litton to that end.

26.     When their finances continued to deteriorate, Brian and Jessica filed a bankruptcy case pursuant to Chapter 13 of the United States Bankruptcy Code on April 13, 2010 in the United States Bankruptcy Court for the Northern District of Ohio, Case No. 10-1311-H (the "Bankruptcy Case").

27.     Litton appeared in the Bankruptcy Case and participated in those proceedings by filing its claim based upon the Loan.

28.     During the course of the Bankruptcy Case, Brian and Jessica proposed a Chapter 13 Plan (the "Chapter 13 Plan" as modified on May 29, 2010).

29.     The Chapter 13 Plan was confirmed by the Bankruptcy Court on July 22, 2010.  A copy of the Bankruptcy Court's Confirmation Order and confirmed Chapter 13 Plan is attached as ***Exhibit B***.

30.     During the course of the Bankruptcy Case, Brian and Jessica again sought to modify their Loan to make the payments more affordable.

31.     On December 30, 2011, Ocwen, having since taken over servicing duties of the Loan on behalf of HSBC from Litton, agreed to modify the Loan

pursuant to a written Loan Modification Agreement, executed by Brian and Jessica and by Ocwen. A true and correct copy of the Loan Modification Agreement is attached as **Exhibit C**.

32.     As required, Brian and Jessica sought approval by the Bankruptcy Court by filing Debtors' Motion for Order Granting Authority to Enter Into Loan Modification with Ocwen Loan Servicing, LLC (the "Motion to Approve Loan Modification"). A copy of the executed Loan Modification Agreement was attached to the Motion to Approve Loan Modification.

33.     On June 13, 2012, the Bankruptcy Court entered its Order Granting Debtors' Motion for Order Granting Authority to Enter Into Loan Modification with Ocwen Loan Servicing, LLC.  A true and correct copy of the Court's order is attached as **Exhibit D**.

34.     At all times, Ocwen was represented in the Bankruptcy Case by counsel and received notice of all proceedings.

35.     Ocwen received the Loan Modification Agreement executed by Brian and Jessica and returned a copy of that agreement to the borrowers executed by Ocwen's representative.

36.     Ocwen did not, however, record the Loan Modification Agreement as required by Ohio Revised Code 5301.231(A).

37.     Pursuant to the terms of the Loan Modification Agreement, the principal balance due was set at $71,898.56 and the rate was adjusted to a fixed 3.8%. Brian and Jessica agreed to pay an initial payment of $443.68 on or before February 1, 2012 and thereafter begin making payments of principal and interest in the amount of $304.60 beginning on March 1, 2012 until the principal balance was paid upon a modified maturity date of August 1, 2035. See *Exhibit C.*

38.     Ocwen received a fully executed copy of the Loan Modification Agreement and was on notice that the Bankruptcy Court had entered its order approving that agreement.

39.     Thereafter, Brian and Jessica made the initial payment of $443.68 due for February 1, 2012 and commenced payment of the subsequent monthly principal and interest payment of $304.60 beginning on March 1, 2012.

## OCWEN'S FAILURE TO HONOR ITS AGREEMENT

40.     In July 2012, Ocwen breached the Loan Modification Agreement by refusing to accept payment from Brian and Jessica.  Incredibly, Ocwen claimed that the Loan Modification Agreement was not binding because an original had not been tendered to Ocwen.

41.     On August 14, 2012, Brian and Jessica filed in the Bankruptcy Court Debtors' Motion for Order Enforcing Terms of Loan Modification Agreement

("Motion to Enforce"), seeking to have the Bankruptcy Court determine the dispute between the parties. A copy of the Motion to Enforce is attached as **_Exhibit E_**.

42.     Ocwen received notice of the Motion to Enforce.

43.     The Bankruptcy Court conducted a hearing on the Motion to Enforce and granted that motion on September 24, 2012. A true and correct copy of the Order Granting Debtors' Motion for Order Enforcing Terms of Loan Modification Agreement is attached as **_Exhibit F_**. That order provides: "[Ocwen] is hereby ordered to honor and adhere to the terms of the loan modification agreement between Ocwen and the debtors dated December 30, 2011."

44.     The Debtors successfully completed their Chapter 13 Plan, received a discharge, and the Bankruptcy Case was closed on July 10, 2014.

45.     Notwithstanding its agreement with Brian and Jessica, as well as a court order entered in the Bankruptcy Case compelling it to abide by the terms of the Loan Modification Agreement, Ocwen continued to breach that agreement by failing to apply payments received according to the terms of the Loan as modified.

46.     Commencing with the mortgage loan statement issued by Ocwen for February 2012 and in all statements issued to the borrowers through August 2017, Ocwen has continued to act as if the Loan has not been modified and has sought to collect amounts not due.

47.     From February 2012 continuing to the present, Ocwen has failed to apply payments made by Brian and Jessica according to the terms of the Loan as modified by the Loan Modification Agreement.

48.     Ocwen has improperly held payments in suspense.

49.     Additionally, Ocwen has improperly assessed late fees and other default-related charges which Ocwen had no reasonable basis to impose.

50.     Brian and Jessica made all payments required by the terms of the Loan as modified and otherwise fully performed each and every obligation they had under the terms of the Loan as modified.

51.     In breach of its obligations, Ocwen refused to accept and apply payments made by Brian and Jessica.  Ocwen returned the July 7, 2014 and August 7, 2014 payments.

52.     Brian and Jessica repeatedly communicated with Ocwen regarding the proper application of their payments but Ocwen repeatedly refused to correct its errors and continued to claim that improper amounts were due.

## THE WRONGFUL FORECLOSURE

53.     After improperly refusing to accept and apply payments, and otherwise refusing to honor the terms of the Loan as modified by the Loan

Modification Agreement, Ocwen wrongfully declared Brian and Jessica to be in default.

54. Ocwen then retained MDK on behalf of HSBC and directed MDK to file a foreclosure case against Brian and Jessica to collect the Loan.

55. On April 1, 2016, MDK filed a foreclosure case in the Court of Common Pleas, Cuyahoga County, Ohio (Case No. CV-16-861325, the "Foreclosure Case"). A true and correct copy of the complaint filed in the Foreclosure case by MDK is attached as ***Exhibit G***.

56. In the Foreclosure Case, MDK acting on behalf of Ocwen and HSBC asserted that the Loan was in default as of June 1, 2012. See *Exhibit G*.

57. Brian and Jessica appeared in the Foreclosure Case and filed their answer denying default and specifically raised the Loan Modification Agreement as an issue to dispute the alleged default.

58. Though MDK was now on notice that the Loan Modification Agreement had been executed, that a court had ordered its client to honor and abide by that agreement, and that that agreement would be a defense to any judgment on the complaint to foreclose, MDK moved forward with the Foreclosure Case and took steps that would have directly led to the sale of the Home.

59.     On October 6, 2016, Jessica appeared and raised the issues that were in dispute  - including the fact that the Loan had been modified pursuant to the Loan Modification Agreement -  and the hearing was initially adjourned so that MDK could investigate the matters raised by the borrowers in defense. A true and correct copy of the transcript of proceedings before the Magistrate Judge on October 6, 2016 is attached as ***Exhibit H***.

60.     On February 15, 2017, the Magistrate Judge in the Foreclosure Case granted the Motion for Summary Judgment and entered a recommendation that the judge grant judgment of foreclosure and sale. A true and correct copy of the Magistrate's Decision in the Foreclosure Case is attached as ***Exhibit I***. That recommendation was never adopted by the court.

61.     Brian and Jessica contested the Magistrate's Decision by filing their objections *pro se* on March 8, 2017. In this objection, Brian and Jessica again contest the fact of default and the entry of judgment of foreclosure against them. A true and correct copy of the Objection to Magistrate's Decision is attached as ***Exhibit J***.

62.     On June 20, 2017, MDK filed its Memorandum in Opposition to Defendants' Objection to Magistrate's Decision, again falsely claiming that Brian

and Jessica are in default and ignoring the existence of the Loan Modification Agreement.  A true and correct copy of this pleading is attached as ***Exhibit K***.

63.     During this period, Brian and Jessica were not represented by counsel. They were confused and scared at the prospect of losing their Home but were and remain determined to do whatever they can to remedy the wrongs inflicted upon them by Ocwen.

64.     While defending the Foreclosure Case on their own, Brian and Jessica also reached out to the Consumer Financial Protection Bureau ("CFPB") for help with their Loan and Ocwen's servicing errors.  A true and correct copy of the borrowers' correspondence to the CFPB is attached as ***Exhibit L***.

65.     By letter dated March 31, 2017, Ocwen writes to Brian and Jessica in response to their CFPB letter.  In this letter, Ocwen states:

> On January 3, 2012, the Loan Modification Agreement was forwarded to the mailing address on file. From the period of January 12, 2012 through June 7, 2012, copies of the modification agreement were received; however the modification was reversed as a result of Ocwen not receiving a hardcopy of the signed Loan Modification Agreement per the requirements of Cuyahoga County, Ohio.

A true and correct copy of Ocwen's March 31, 2017 letter is attached as ***Exhibit M***.

66.     The representations made by Ocwen in the March 31, 2017 letter were false and deceptive.  Ocwen had in fact received a copy of the Loan Modification Agreement signed by borrowers, an agreement that had been countersigned by the Ocwen.   Moreover, the agreement had been filed as a public record in the Bankruptcy Case, had been approved by the Bankruptcy Court and Ocwen had specifically been ordered to comply with its terms.  See *Exhibits D and F*.

67.     In the March 31, 2017 letter, Ocwen goes on to state:

> On March 2, 2017 and March 6, 2017 respectively we received Inquiries from the CFPB on your behalf regarding the 2011 modification not being completed.  After a review of documents included with your correspondence, it was determined that the modification approved by the bankruptcy court will be honored despite the aforementioned reasons for the initial reversal. As a result, the modification will retroactively be effective with the March 1, 2012 payment. Payments made after that date will be reversed and reapplied per the completion of the modification.

See *Exhibit M*.

68.     Thus, as of at least March 31, 2017, Ocwen knew and outwardly acknowledged that the basis for its maintenance of the Foreclosure Case was false. Notwithstanding this fact, Ocwen took no action to prevent MDK from continuing to prosecute the case and move toward a judicial sale of the Home.

69.     When MDK filed its Memorandum in Opposition to Defendants' Objection to Magistrate's Decision, it knew that the allegations that it made to the Court on behalf of the plaintiff in that case were false.

### BRIAN AND JESSICA SEEK ASSISTANCE OF COUNSEL TO CORRECT OCWEN'S ERRORS

70.     Having exhausted all efforts at self-help, and facing the dire prospect of losing their Home, on July 7, 2017, Brian and Jessica retained counsel.

71.     Counsel promptly filed an appearance in the Foreclosure Case and a Motion for Leave to File Supplemental Objections to the Magistrate's Decision. That motion was subsequently granted and the Supplemental Objections to the Magistrate's Decision was filed.

72.     Thereafter, MDK sought and the Court granted a voluntary dismissal of the Foreclosure Case by journal entry dated August 22, 2017.

73.     On August 18, 2017, Brian and Jessica, by and through counsel, sent *via* certified mail, correspondence to Ocwen captioned Notices of Error(s) pursuant to 12 C.F.R. §1024.35(b)(7) and 12 C.F.R. §1024.36(b)(11). A true and correct copy of this correspondence, referenced hereinafter as "NOE #1", is attached as **Exhibit N**.

74.     NOE #1 raises one hundred seventeen (117) distinct errors related to Ocwen's servicing of the Loan and requested that Ocwen correct those errors. In particular, NOE #1 requested, *inter alia*, that Ocwen correct its failure to honor Loan Modification Agreement and its failure to properly apply payments made by Brian and Jessica pursuant to Loan as modified.

75.     Ocwen received NOE #1 at the address it designated for receipt of such notices.

76.     Thereafter, Ocwen has undertaken no actions to correct the errors raised.

77.     Instead, by letter dated October 24, 2017, Ocwen states that "[o]ur records indicate this loan is in foreclosure and its maturity date has been accelerated."  A true and correct copy of this letter is attached as ***Exhibit O***.  On the date this letter was written, the Foreclosure Case had been dismissed for over two months.

78.     By letter dated October 27, 2017, Ocwen writes to advise Brian and Jessica of their loss mitigation options stating "we are committed to working with you." A true and correct copy of this letter is attached as ***Exhibit P***.

79.     On November 9, 2017, MDK sent correspondence to Brian and Jessica captioned "Notice Under Fair Debt Collection Practices Act." A true and correct copy of this letter is attached as ***Exhibit Q***.

80.     In its letter, *Exhibit Q*, MDK falsely states: "As of the date of this letter, no attorney at MDK has evaluated the debt."

81.     MDK's foregoing statement was false because MDK had filed and maintained the Foreclosure Case, was aware of the pleadings and allegation made therein, and had in fact sought the voluntary dismissal of that case when the factual basis for maintaining that suit became invalid. MDK had in fact "evaluated the debt" and had determined that it should cease collection by voluntarily dismissing the Foreclosure Case.

82.     In its letter, *Exhibit Q*, MDK also falsely states: "the amount of the debt is $134,911.11."

**IMPACT ON AND DAMAGE TO BRIAN AND JESSICA**

83.     Brian and Jessica reached out to Ocwen for help in 2011 when they encountered financial difficulty. They submitted required information, obtained a loan modification, and thereafter dutifully made required payments. In short, they honored their agreement; Ocwen did not.

84.     What followed was a saga of tortuous abuse in servicing detailed hereinabove which began shortly after the Loan Modification Agreement was executed and continues to this day.

85.     The impact of Ocwen's conduct and that of its law firm on Brian and Jessica has been severe- emotionally, physically, and financially.

86.     Brian and Jessica faced this hardship alone and without the assistance of counsel for years and did their best to have Ocwen simply correct its mistake and live up to its agreement embodied in the Loan Modification Agreement.

87.     It was in this context that Ocwen's servicing errors and indifference had a major impact on Brian and Jessica. Brian and Jessica were consumed by worry over the status of the Loan at a time when neither could reasonably be expected to bear such worries and the extreme emotional stress it produced.

88.     Yet, each month Brian and Jessica dutifully made or attempted to make their required mortgage payment to Ocwen.

89.     Ocwen breached the Loan as modified by the Loan Modification Agreement, ignored Brian and Jessica's pleas to investigate and correct errors, sent multiple false letters and correspondence that upset Brian and Jessica, improperly applied payments made, assessed late charges and other fees, reported Brian and Jessica as delinquent to credit bureaus, repeatedly placed collection calls to the

home phone and cell phones of Brian and Jessica, failed to properly investigate and respond when Brian and Jessica retained counsel and counsel brought errors to Ocwen's attention, and filed a wrongful foreclosure which was dismissed only after Ocwen's egregious conduct was confirmed by their own counsel. To this day, the errors raised have not been corrected. As evidenced by the correspondence from Ocwen dated October 24, 2017 and October 27, 2017, Ocwen has no intent or willingness to acknowledge or correct its errors.

90.    MDK's letter of November 9, 2017 falsely claims to have not evaluated the debt and persists in claiming amounts not due. These statements are demonstrably untrue and MDK knew they were false when they were made.

91.    Brian and Jessica have endured severe emotional distress directly and proximately caused by the conduct of Ocwen and its law firm. This stress is driven by the daily ongoing fear that they might lose their Home in foreclosure and be forced to leave their Home. This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress and which promised dire medical consequences.

92.    The actions of Ocwen and its law firm have further caused Brian and Jessica to unnecessarily remain in a default or otherwise in delinquent status on the Loan and remain in foreclosure for a significantly longer time than they would

have if Ocwen and its law firm had acted appropriately and with reasonable diligence in their handling of errors alleged, which has caused continued damage to their credit and an unnecessary delay to Brian and Jessica's rehabilitation of their credit.

93.    By wrongfully filing the Foreclosure Case, Ocwen and its law firm have created an adverse public record - a scarlet letter if you will -  that can never be removed.  For the rest of their lives, Brian and Jessica must endure that record and engage in painful and embarrassing discussions and explanations as to why that record exists.

94.    The actions of Ocwen and its law firm have caused Brian and Jessica to incur actual damages including time of work, travel expenses to and from court, filing fees, attorneys' fees to defend the Foreclosure Case, costs, and expenses for the investigation and preparation of the NOE #1, and the preparation and prosecution of this action.

95.    Throughout this entire ordeal, Brian and Jessica have merely wanted to save their Home. They have repeatedly asked Ocwen to just fix the problems with their Loan - problems with Ocwen readily concedes exist - and Ocwen has steadfastly failed and refused to do so.

96.     Ocwen has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of the Real Estate Settlement Procedure Act, 12 U.S.C. §§2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024 ("RESPA"). At the time of the filing of this Complaint, Ocwen has had at least Eleven Thousand Seventy Five (11,075) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which can be located at the following hyperlink: http://www.consumerfinance.gov/complaintdatabase/.

97.     On April 20, 2017, the CFPB filed suit against Ocwen in the Federal District Court for the Southern District of Florida (Case No. 9:17-cv-80495) ("CFPB Lawsuit").

98.     The CFPB Lawsuit alleges in Paragraph 33 a possible explanation for the travails of Brian and Jessica and clearly demonstrates that Ocwen's behavior in this case is part of a larger pattern and practice:

> "As set forth in greater detail below, Ocwen has serviced loans and collected upon debts based on inaccurate and incomplete borrower loan information. Ocwen has often input inaccurate and incomplete information, or failed to input accurate or complete information, about borrowers' loans into its

REALServicing system of record. Even when the information in REALServicing has been accurate, REALServicing has generated inaccurate information about borrowers' loans due to system deficiencies. Because of these system deficiencies, Ocwen has had to rely upon manual processes and workarounds that have themselves resulted in errors in borrowers' loan information." …

And at Paragraph 69 of the CFPB Complaint more indication that the problems the plaintiffs have encountered was part of a larger pattern and practice:

"Ocwen's use of inaccurate and incomplete information resulting from its boarding of inaccurate and incomplete information into REALServicing, REALServicing's deficiencies, and Ocwen's error-prone manual processes has caused or is likely to have caused borrowers substantial harm, and resulted in Ocwen communicating, orally and in writing, information to borrowers that it knew or had a reason to know was inaccurate."

99.     Based on the actions of Ocwen, the Brian and Jessica seek recovery for the claims alleged, *infra*.

## COUNT ONE: AGAINST HSBC AND OCWEN

### [Breach of Contract]

100.   Brian and Jessica restate and incorporate all of their statements and allegations contained in paragraphs 1 through 99 in their entirety, as if fully rewritten herein.

101.   The Loan, as modified by the Loan Modification Agreement, is an enforceable contract between Brian and Jessica, HSBC and Ocwen.

102.   HSBC and Ocwen breached the contract by failing to honor its terms, failing to accept and apply payments made by Brian and Jessica in accordance with the terms of the contract, by claiming amounts due which were not due, by assessing fees and charges improperly, by declaring a default when there was no basis to do so, and by filing the Foreclosure Case.

103.   Brian and Jessica fully performed their obligations pursuant to the contract by tendering payment of amounts properly due and by otherwise meeting each and every obligation imposed by the parties' contract.

104.   Based on Paragraph 2 of the Mortgage, Ocwen had an obligation to properly apply all funds when tendered to the balances owed to the interest, principal, escrow, late fees, and then any other corporate advances due on the Loan.  Based on the allegations contained herein, *supra*, these funds have not been credited which led to the improper declaration of default of the Loan.  Instead Ocwen has taken funds directly earmarked to go to those loan accounts and applied those funds to other balances due on the loan and/or in an improper manner as required under the Note, Mortgage, and LMA #1.

105.   HSBC and Ocwen have breached the contract and this breach is one of bad faith as demonstrated by the allegations above. Ocwen failed to exercise discretion in the servicing of the Loan. Both HSBC and Ocwen owed the plaintiffs

a fiduciary duty to handle payments of principal, interest, and escrow properly. Each breached their duty by failing to accept and apply payments made by Brian and Jessica in accordance with the terms of the contract, by claiming amounts due which were not due, by assessing fees and charges improperly, by declaring a default when there was no basis to do so, and by filing the Foreclosure Case.

106. Brian and Jessica suffered actual damages as detailed, *infra.*, including but not limited to, having to defend against this wrongful accounting and the foreclosure. Plaintiffs continue to suffer economic and noneconomic damages as a result of the breach including continued credit diminution, distress, fear of losing their home, and mental anguish.

107. Plaintiffs are entitled to actual damages, reasonable attorneys' fees and costs jointly and severally against HSBC and Ocwen.

## COUNT TWO: AGAINST OCWEN

### Violation of 12 C.F.R. §1024.35(e)

### [Ocwen's Failure to Properly Respond to a Notice of Error in Violation of 12 C.F.R. §1024.35]

108. Brian and Jessica restate and incorporate all of their statements and allegations contained in paragraphs 1 through 99 in their entirety, as if fully rewritten herein.

109. 12 C.F.R. §1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

110. NOE #1 sets out multiple errors in servicing by Ocwen.

111. Ocwen failed to reasonably investigate and respond to these errors and instead sent its letters of October 24, 2017 and October 27, 2017 and directed its counsel MDK to send its November 9, 2017 letter.

112. Any reasonable investigation into the errors alleged by and through NOE #1 would have uncovered the errors alleged and in particular Ocwen's own admissions through its own correspondence dated March 22, 2017 (*Exhibit L*) wherein it acknowledged its errors and pledged to fix the problem.

113.   Ocwen's actions, in failing to conduct a reasonable investigation of the errors alleged by and through NOE #1, constitute a clear and material violation of 12 C.F.R. §1024.35(e).

114.   Ocwen's actions are believed to be a pattern and practice of behavior in conscious disregard for Brian and Jessica's rights.

115.   As a result of Ocwen's actions, Ocwen is liable to Brian and Jessica for actual damages, as described, *supra*, as well as for statutory damages, costs, and attorneys' fees.

## COUNT THREE: AGAINST HSBC

### Violation of 12 C.F.R. §1026.41

### [Violation of TILA - failure to send correct periodic billing statements]

116.   Brian and Jessica restate and incorporate all of their statements and allegations contained in paragraphs 1 through 99 in their entirety, as if fully rewritten herein.

117.   12 C.F.R. §1026.41(a) requires that a servicer must provide the consumer a periodic statement meeting the requirements of 12 C.F.R. §1026.41 for each billing cycle of the transaction.

118.   12 C.F.R. §1026.41(d) provides that the required periodic billing statements shall include information including the amount due, an explanation of

the amount due, delinquency information, and account information including the current outstanding principal balance and interest rate.

119.   Brian and Jessica are consumers.

120.   From December 1, 2016 through November 30, 2017, Ocwen acting on behalf of HSBC, caused twelve (12) periodic billing statements to be sent to the Plaintiffs.

121.   Based on Ocwen's admissions in Exhibit M, Ocwen, acting on behalf of HSBC, knew or should have known the information contained in those statements was facially inaccurate given their failure to properly board the Loan Modification Agreement.

122.   The knowing failure to transmit accurate and truthful information through the periodic billing statements wholly defeated the purpose of such statements, that is, to properly provide accurate disclosures to Plaintiffs of their obligations on the Loan.

123.   HSBC's actions in causing or otherwise facilitating these monthly statements to be sent out with facially inaccurate information is a violation of TILA.

124.   HSBC's actions are a pattern and practice in conscious disregard of Plaintiffs' rights.

125.    As a result of the above violations described herein, HSBC is liable to the Plaintiffs individually statutory damages for for twelve (12) separate violations, actual damages, and reasonable attorneys' fees and costs.

## COUNT FOUR: AGAINST HSBC AND OCWEN

### [28 U.S.C. §2201(a): Declaratory Judgment Releasing the Note]

126.    Brian and Jessica restate and reincorporate all of their statements and allegations contained in Paragraphs 1 through 99 in their entirety as if fully rewritten herein.

127.    At all times relevant to this case, the Ohio Revised Code requires that the party entitled to enforce the note must either be in possession of the note or have a right to enforce the note.

128.    On or about June 22, 2010, HSBC filed Proof of Claim No. 5-1 in the Plaintiffs' Chapter 13 Case which included the filing of the Note and Mortgage which is attached as Exhibit A to the Complaint.

129.    When MDK filed the Foreclosure Complaint attached as Exhibit G to the Complaint as well as at all times during the foreclosure, HSBC, Ocwen and MDK held out that the Note and Mortgage attached to Exhibit G were the true and accurate copy of the Note.

130.    The promissory notes in Exhibit G and Exhibit A from pages 1

through 3 differ in the signature of Plaintiff Jessica Perez. Exhibit A's signature page contains a signature of "Jessica Perez" and Exhibit G's signature page contains a signature of "Jess Perez." *See Exhibit A at p. 29; Exhibit G at p. 11.*

131. In addition Pages 1 through 4 of each note contain the initials "BTF" and "JMP" however on Exhibit A the initials are JMH and BTF while on Exhibit G the initials are listed as BTF and JMH. *See Exhibit A at p.25-28 ; Exhibit G at pp. 7-10*

132. A review of Exhibits A and G plainly reveal that Ocwen, on behalf of HSBC, is claiming a true and accurate version of the Note which is completely different and altered from the Note presented by HSBC in the Chapter 13 Case.

133. Without any legally cognizable interest in favor of HSBC, the Plaintiffs are not in a position to be remitting payments to Ocwen, HSBC, or any other alleged party in interest for a debt that is alleged to be due and owing under the Note until the original note, Exhibit A, is produced. Any payments that the Plaintiffs would attempt to make on a Note to Ocwen/HSBC would be to the Plaintiffs' continued financial detriment.

134. Based on the foregoing the Plaintiffs are requesting this Court declare that neither HSBC nor Ocwen nor any other party in interest have a legally enforceable interest in the Note attached as Exhibit G on the basis that either (a)

Exhibit G is manipulated document which substantially differs from Exhibit A and/or (b) that the Note is unenforceable by either HSBC or Ocwen without specifically producing the original note and an explanation as to the differences between Exhibit A and Exhibit G.

135.  Based upon the allegations herein, the Court should further issue a declaration extinguishing the Plaintiff's obligation under the Note.

## COUNT FIVE: AGAINST HSBC AND OCWEN

### [R.C. 5303.01: Quiet Title]

136.  Brian and Jessica restate and incorporate all of their statements and allegations contained in Paragraphs 1 through 99 in their entirety, as if fully rewritten herein.

137.  R.C. 5303.01 is the only statutory authority method by which a party can initiate a quiet title action.

138.  Plaintiffs have standing to bring this quiet title action because they are the title owners, and in possession, of the real property which is subject of this litigation.

139.  Plaintiffs state that Defendants HSBC and Ocwen may claim some interest in a Note originally delivered to Ownit Mortgage Solutions, Inc. on July 17, 2005.

140.   Plaintiff states that Defendant HSBC is the current mortgagee of record.

141.   Based upon the allegations in Count Four if this Court were to find the Note was unenforceable, the efficacy of the Mortgage has been destroyed, the Note has been rendered unsecured, and the Mortgage is now an unenforceable cloud on title to the Premises.

142.   Based upon the allegations described herein, Plaintiffs are entitled to an Order to Quiet Title against Defendants HSBC and Ocwen, by striking the mortgage, and cancelling the Plaintiff's obligation under the Mortgage and instructing the office of the Cuyahoga County Recorder to release the Mortgage attached hereto as Exhibit A.

## COUNT SIX: AGAINST MDK

### Violation of 15 U.S.C. §1692k

### [Violation of the Fair Debt Collection Practices Act]

143.   Brian and Jessica restate and incorporate all of their statements and allegations contained in paragraphs 1 through 99 in their entirety, as if fully rewritten herein.

144.   MDK is a debt collector. MDK regularly uses the instrumentalities of interstate commerce and/or the mails in its business the principal purpose of which

is the collection of debts, and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

145.   Brian and Jessica are consumers.

146.   The Loan is a consumer debt within the meaning of the FDCPA because it was incurred for household purposes - the purchase of the Home.

147.   The Loan was in default at the time that MDK attempted to collect the debt by means of the Foreclosure Case and its letter dated November 9, 2017.

148.   MDK violated 15 U.S.C. §1692(e)(2) when it misrepresented the character, amount, or legal status of the Loan. MDK misrepresented to Brian and Jessica that the they were in default, that they owed sums which were not in fact due, and that the Home would be foreclosed upon.

149.   The November 9, 2017 correspondence sent to Brian and Jessica by MDK was false and was deceptive.

150.   MDK knew or had reason to know that the sums claimed by Ocwen and HSBC were not in fact due, that the Loan was not in default, that payments had been properly and timely made, that Ocwen had repeatedly misapplied those payments, that Ocwen had declared the Loan in default incorrectly, and that the Foreclosure Case had been improperly filed and maintained for over a year.

151.   MDK violated 15 U.S.C. §1692(e)(5) when it threatened to take an

action  - the collection of amounts not due - that cannot legally be taken.

152.   MDK violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

153.   MDK violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt - the threat of an imminent foreclosure sale of the Home.

154.   Brian and Jessica were damaged by the above actions as described *supra*.

155.   As a result of the above violations of the FDCPA, Brian and Jessica are entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. §1692k(a).

## COUNT SEVEN: AGAINST OCWEN

### Violation of O.R.C. 1345, *et seq*.

### [Violation of the Ohio Consumer Sales Practices Act]

156.   Brian and Jessica restate and incorporate all of their statements and allegations contained in paragraphs 1 through 99 in their entirety, as if fully rewritten herein.

157.   The Ohio Consumer Sales Practices Act is a state consumer protection

law prohibiting unfair and deceptive acts and practices by suppliers before, during, or after a consumer transaction. R.C. 1345.02(A). The Ohio Consumer Sales Practices Act prohibits unconscionable acts or practices in connection with residential mortgages by suppliers before, during, or after a consumer transaction. R.C. 1345.031.

158. Plaintiffs are consumers, the Loan is a consumer transaction, and Ocwen is a supplier as defined by the OCSPA, R.C. 1345.01.

159. Ocwen is a "nonbank mortgage lender" as defined at R.C. 1345.01(K) because Ocwen is a nonbank mortgage lender registered with the Nationwide Mortgage Licensing System as NMLS ID #1852, and licensed by the Ohio Department of Commerce, Division of Financial Institutions as License Numbers MBMB.850194.00 and SM.501557.000.

160. Ocwen has contractual privity with the Plaintiffs as a partial assignee of the Loan. It has been assigned and has agreed to undertake obligations for servicing the Loan.

161. Ocwen is subject to the Ohio Consumer Sales Practices Act as a nonbank mortgage lender and assignee of the mortgage. *See R.C. 1345.091 and Powers v. Green Tree Servicing, L.L.C., 2015-Ohio-3355*.

162. Ocwen has contractual privity with the Plaintiffs through the Loan

Modification Agreement previously referenced and attached as *Exhibit C*, the offer, negotiation, and execution of which is, in and of itself, a "consumer transaction" independent of the origination of the Loan.

163. Conduct such as Ocwen's conduct (as alleged in the preceding paragraphs and as alleged below) has been determined to be in violation of one or more sections of the Ohio Administrative Code Section 109:4-3, *et seq*, and R.C. 1345.05(B)(2), and has previously been determined by Ohio courts to violate the Ohio Consumer Sales Practices Act, R.C. 1345 *et seq.* Ocwen committed said violations after the creation and publication of rules pursuant to R.C. 1345.05(B)(2), and after such court decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

164. Ocwen committed unfair and unconscionable acts by failing to honor the terms of the Loan and the Loan Modification Agreement, failing to accept and apply payments made by Brian and Jessica in accordance with the terms of the contract, by claiming amounts due which were not due, by assessing fees and charges improperly, by declaring a default when there was no basis to do so, by filing the Foreclosure Case, and by filing a foreclosure case using an altered note.

165. Ocwen's conduct constitutes unfair practices under the Ohio Consumer Sales Practices Act.

166. Ocwen engaged in an unfair or deceptive act or practice when Ocwen repeatedly misrepresented to Brian and Jessica the amounts due and owing pursuant to the Loan.

167. Ocwen engaged in an unfair or deceptive act or practice when Ocwen sent to Brian and Jessica false and misleading mortgage loan statements and letters.

168. Ocwen engaged in an unfair or deceptive act or practice when Ocwen failed to properly apply funds paid to Ocwen by Brian and Jessica to principal, interest, and escrow.

169. Ocwen engaged in an unfair or deceptive act or practice when Ocwen filed the Foreclosure Case and therein made demonstrably false and misleading statements of fact.

170. Ocwen engaged in an unfair or deceptive act or practice when Ocwen failed to correct multiple servicing errors, when those errors were repeatedly brought to its attention and despite the fact that it had admitted its errors.

171. Ocwen engaged in an unfair or deceptive act or practice when Ocwen made false representations to the court in the Foreclosure Case and to the CFPB. Ocwen made such representations falsely or with such utter disregard and recklessness for whether such were true or false that knowledge should be inferred.

172. Brian and Jessica have been damaged by the above actions as

described *supra*.

173.   The conduct of Ocwen is willful, wanton, and it shows a reckless disregard for Brian and Jessica's rights and they are entitled to recover actual damages, statutory damages, treble damages, costs, and attorney fees.


## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs, Brian Finley and Jessica Finley, respectfully request that this Court enter an order granting Judgment against Defendants HSBC, Ocwen, and MDK for the following:

A.    For actual damages, all costs and reasonable attorney fees against Defendants jointly and severally, as applicable, as to all allegations contained in Counts One through Seven;

B.    For statutory damages of Two Thousand Dollars ($2,000.00) per Plaintiff against Defendant Ocwen for each and every violation contained in Count Two; .

C.    For statutory damages of Four Thousand Dollars ($4,000.00) per Plaintiff against Defendant HSBC for each and every violation contained in Count Three;

D.    For statutory damages of One Thousand Dollars ($1,000.00) per

Plaintiff against Defendant MDK for each and every violation contained in Count Six;

E.     For statutory damages of up to Five Thousand Dollars ($5,000.00) per Plaintiff against Defendants Ocwen and HSBC for each and every violation contained in Count Seven;

F.     For Treble Damages per Plaintiff against Defendants Ocwen and HSBC for each and every violation contained in Count Seven

G.     For a declaration that Ocwen and HSBC possess an unenforceable note as contained in Count Four;

H.     For an Order quieting title and judicially cancelling said mortgage as contained in Count Five; and

I.     For all other relief this Court may deem just and proper.

*Respectfully submitted,*

/s/ Marc E. Dann, Esq.
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Brian and Jessica Finley*

---

**JURY DEMAND**

---

Plaintiffs, Brian and Jessica Finley, hereby respectfully demand a trial by jury on all such claims that may be so tried.

<u>/s/ Marc E. Dann, Esq.</u>
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw