# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

| | |
|---|---|
| **Brian Finley, et al.,** | **Case No. 1:17-cv-02561** |
| **Plaintiffs,** | **Judge Dan Aaron Polster** |
| **vs.** | |
| **Ocwen Loan Servicing, LLC, et al.,** | **MOTION OF DEFENDANT MANLEY DEAS KOCHALSKI LLC TO DISMISS FOR FAILURE TO STATE A CLAIM** |
| **Defendants.** | |

Now comes defendant Manley Deas Kochalski LLC ("MDK"), by and through undersigned counsel, and hereby moves this Court to dismiss the claims that plaintiffs Brian Finley and Jessica Finley (the "Finleys") have asserted against MDK under the Fair Debt Collections Practices Act ("FDCPA") under Rule 12(b)(6).

The Finleys have not alleged facts to indicate that MDK violated any provision of the FDCPA set forth in their complaint. A memorandum in support of Manley Deas's motion to dismiss is attached hereto and incorporated herein.

Respectfully submitted,

/s/ Matthew J. Richardson
Matthew J. Richardson
Manley Deas Kochalski LLC
P. O. Box 165028
Columbus, OH  43216-5028
Telephone:  614-222-4921
Fax:  614-220-5613
Email:  mjr2@manleydeas.com
*Attorney for Defendant Manley Deas Kochalski LLC*

1

## MEMORANDUM IN SUPPORT

**Introduction**

The claims of plaintiffs Jessica Finley and Brian Finley (the "Finleys") against defendant Manley Deas Kochalski LLC ("MDK") fail because the Finleys do not allege facts to indicate that MDK violated any of the provisions of the Fair Debt Collections Practices Act ("FDCPA"). Most obviously, the Finleys' claim against MDK under 15 U.S.C. § 1692d fails because the Finleys do not allege facts to indicate that MDK engaged in any harassing or abusive conduct.

Additionally, the Finleys' claims that MDK violated provisions of 15 U.S.C. § 1692e fail because the Finleys do not allege any facts to indicate that MDK made any materially false, deceptive, or misleading representations to them. As to their claim under Section 1692e(5), which bars a debt collector from making "threat[s] to take action that cannot legally be taken or that is not intended to be taken," the Finleys do not allege any facts to indicate that MDK made any threats to them whatsoever.

Furthermore, the Finleys' claim fails that MDK violated Section 1692e(2)(A), which bars a debt collector from falsely representing "the character, amount, or legal status of any debt."  In this respect, the Finleys allege that MDK's debt validation notice contained certain misrepresentations with respect to the debt amount and whether MDK had evaluated the debt. However, there are no misrepresentations included in the debt validation letter, and if there were, they were not material and could not have compromised the Finleys' capacity to respond to the debt intelligently. This is particularly so considering the purpose of a debt validation letter under Section 1692g of the FDCPA is to invite the consumer to dispute the debt, as the language of the debt validation letter expressly states.  Furthermore, MDK's debt validation letter was sent to the office of the Finleys' legal counsel, not to the Finleys' personal address. As such, MDK's debt

validation letter was necessarily filtered through their legal counsel and the "least sophisticated consumer" test cannot apply to determine whether MDK violated Section 1692e of the FDCPA.

Finally, the Finleys' claim fails that MDK violated 15 U.S.C. § 1692f.  Section 1692f is the FDCPA's "catch-all" and bars certain "unfair or unconscionable" conduct that other sections of the FDCPA may not prohibit.  However, as with their claim under Section 1692d, the Finleys do not allege any facts to indicate that MDK engaged in any unfair or unconscionable behavior.  The Finleys merely allege facts to indicate that MDK represented the plaintiff in the foreclosure action in the ordinary course, dismissed the foreclosure before a final judgment could be taken against the Finleys, and then sent them a debt validation notice. Such facts cannot plausibly constitute a violation of Section 1692f of the FDCPA.

## Facts

On December 8, 2017, the Finleys filed this action against defendants (i) Ocwen Loan Servicing, LLC ("Ocwen"), their mortgage loan servicer; (ii) HSBC Bank USA, N.A. ("HSBC"), the plaintiff in an Ohio foreclosure action against them; and (iii) MDK, HSBC's counsel in the same Ohio foreclosure action. (ECF No. 1; *see also*, State Foreclosure Docket, Cuyahoga County C.P. No. CV-16-861325, a copy of which is attached hereto as Exhibit 1 (hereinafter, "Fcl. Dkt.").)[1]  Broadly, the Finleys alleged that Ocwen and HSBC erred in failing to apply the terms of a loan modification agreement which was approved by the U.S. bankruptcy court that oversaw the administration of the Finleys' Chapter 13 plan.  (ECF No. 1, ¶ 1.)  The Finleys alleged that MDK violated the FDCPA in making allegedly false representations about their mortgage loan debt in a debt validation notice letter sent to their attorney's office.  (Id., ¶¶ 143-155.)

---

[1]     As a general rule, a federal district court may not consider facts beyond the complaint, the exhibits attached thereto, and the documents referenced therein when ruling on a Rule 12(b)(6) motion to dismiss, but it may nevertheless take judicial notice of public records that are not subject to reasonable dispute in doing so.  *See, e.g., New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

The Finleys sought recovery against Ocwen and HSBC under statutory and common law theories.  (Id., ¶¶ 100-142.) Against MDK, the Finleys claimed that MDK violated several provisions of the FDCPA, including Section 1692d, which bars a debt collector from engaging in harassing or abusive conduct toward consumers; Section 1692e, which bars a debt collector from making materially false, deceptive, or misleading representations to consumers; and Section 1692f, which bars a debt collector from engaging in unfair or unconscionable behavior toward consumers.  (Id., ¶¶ 143-155; *see also* 15 U.S.C. §§ 1692d, 1692e, 1692f.)

<u>The 2016 Foreclosure Action</u>

On April 1, 2016, MDK filed a foreclosure complaint on behalf of HSBC against the Finleys in the Cuyahoga County Court of Common Pleas, seeking a judgment on a promissory note (the "note") and mortgage deed (the "mortgage") in the amount of $90,782.83 at the rate of 4.8% per annum, from July 1, 2012.  (Fcl. Compl., ¶ 8, attached hereto as Exhibit 2.)  Attached to the complaint were copies of the Finleys' note and mortgage, an assignment of mortgage to HSBC, and two loan modification agreements into which the Finleys had entered with HSBC, one from 2007 and one from 2009, involving the Finleys' prior defaults on their loan.  (Id.)

On July 6, 2016, Jessica Finley ("Ms. Finley"), plaintiff in this action, filed an answer to the complaint *pro se*, denying the complaint's substantive allegations and pleading additional facts.  (Ans. Fcl. Compl., attached hereto as Exhibit 3.)  Ms. Finley disputed whether the copy of the promissory attached to the foreclosure complaint was true and accurate.  (Id.)  Furthermore, Ms. Finley disputed whether copies of all loan modification agreements with HSBC were attached to the complaint.  (Id.)

Specifically, Ms. Finley alleged that she had secured a loan modification agreement with Ocwen on December 30, 2011 during the pendency of her Chapter 13 proceeding (the "Ocwen loan modification").  (Id.)  Ms. Finley attached to her pleading copies of the Ocwen loan

4

modification, the Finleys' motion to the bankruptcy court to enforce the terms of the Ocwen loan modification, and an order from the bankruptcy court granting it.  (Id.)  Ms. Finley also attached a copy of another filing from the Finleys' bankruptcy proceeding, specifically styled a "Trustee's Notice of Final Cure Payment," requesting creditor filings as to whether creditors agreed with the trustee that the Finleys had paid sufficient amounts to cure their default.  (Id.)

On July 22, 2016, HSBC moved for summary judgment against Ms. Finley and for default judgment against defendant Brian Finley ("Mr. Finley") who had not filed a response to the complaint.  (Fcl. Dkt.)  On September 8, 2016, the foreclosure court set an oral hearing for October 6, 2016 on HSBC's motion for default judgment against Mr. Finley.  (Id.)

By the time of the October 6, 2016 oral hearing, Ms. Finley had not filed a response to HSBC's summary judgment motion, which had been pending for more than six weeks, and Mr. Finley had not sought leave to respond to the complaint.  (Id.)  HSBC appeared at the oral hearing through an MDK attorney, and Ms. Finley appeared as well, but not Mr. Finley.  (ECF No. 1-8, Hearing Trans.)  The court magistrate heard arguments from Ms. Finley as a "practice run" in the event that the court set a hearing on HSBC's summary judgment motion.  (Id., PageID #153.)  Ms. Finley reiterated the allegations in her responsive pleading and produced copies of documents that the court magistrate copied and handed back to her to enable her to file them "attached to a response to their motion for summary judgment."  (Id., PageID #:160.)

Subsequently, the court magistrate stressed to Ms. Finley the need for "property owners [to] get due process before plaintiff can send the property to a foreclosure sale" and scheduled a hearing on HSBC's pending summary judgment motion against her.  (Id., PageID #:164.)  The court magistrate stated that he would not issue a magistrate's decision on HSBC's judgment motions until he held a subsequent hearing on the summary judgment motion.  (Id., PageID #:164-165.)  The court magistrate further stressed that Ms. Finley "will want to file anything

5

[she] want[ed] [the magistrate] to consider at that hearing at least seven days ahead of that hearing date." (Id., PageID #:165)  Ms. Finley responded "okay." (Id.)

In choosing a hearing date to notice, the magistrate informed Ms. Finley that "[w]henever you see that date you want to be sure to get anything that you want [HSBC's counsel] to respond to filed one week in advance so that he can get a copy of it and be prepared to respond to it on the hearing date." (Id.)   Otherwise, the magistrate informed HSBC of its option of dismissing the case voluntarily if Ms. Finleys' allegations had merit.  (Id., PageID #:175.)

On November 2, 2016, the magistrate scheduled an oral hearing on HSBC's summary judgment motion for December 5, 2016.  (Fcl. Dkt.)  However, by the time of the December 5, 2016 hearing, Ms. Finley had not filed a response to HSBC's summary judgment motion, which had been pending for more than four months, and further despite the magistrate's express instructions to her given at the October 6, 2016 hearing.  (Id.) Nor had Mr. Finley requested leave to respond to the complaint.  (Id.)

Neither of the Finleys appeared at the December 5, 2016 oral summary judgment hearing, and neither of the Finleys filed a motion to continue the hearing.  (ECF No. 1-8, PageID #:181.) As a result, the court magistrate requested from the MDK attorney a proposed magistrate's decision granting HSBC's motions for default and summary judgment against the Finleys.  (Id., PageID #:187.)  Subsequently, the MDK attorney submitted a proposed magistrate's decision, and the magistrate executed and filed it on February 15, 2017.  (Fcl. Dkt.)

Under Ohio Civ.R. 53(D)(3)(b), the Finleys deadline to file objections to the magistrate's decision would lapse fourteen days later, on March 1, 2017, which passed without the Finleys' having filed any objections to the magistrate's decision. (Id.) Nevertheless, on March 8, 2017, Ms. Finley filed untimely objections to the magistrate's decision without seeking leave either before or after the March 1, 2017 deadline.  (Id.)  For the first time, Ms. Finley explained her

6

absence at the December 5, 2016 oral summary judgment hearing, stating that a family emergency had occurred, specifically her grandmother's unexpected death, but did not state why she or Mr. Finley had made no filings with the Court from the date of Ms. Finley's July 6, 2016 pleading to the date she filed her objections to the magistrate's decision on March 8, 2017, eight months later.  (ECF No. 1-10.)

Subsequently, HSBC sought leave to respond to Ms. Finley's untimely objections on the basis that the MDK attorney "is in need of additional time to review the Objection and discuss the status of the case with his client."  (Mot. Ext. March 20, 2017, attached hereto as Exhibit 4.) Additionally, the MDK attorney stated that Ms. Finley was "currently being reviewed for loss mitigation efforts" and further that "the servicer has placed a regulatory hold on the file."  (Id.) Otherwise, the MDK attorney stated that HSBC "is committed to following the state of Ohio's foreclosure process with integrity, candor, and fairness" and that it "takes very seriously the procedural and legal requirements related to the foreclosure process."  (Id.)

HSBC subsequently filed a response to oppose Ms. Finley's objections to the magistrate's decision, noting that they were untimely and filed without leave and further that the Finleys had neither opposed HSBC's summary judgment motion nor appeared at the December 5, 2016 oral hearing on the same motion.  (Resp. Obj. Mag. Dec., attached hereto as Exhibit 5.)

Subsequently, the Finleys retained counsel and moved the magistrate for leave to file supplemental objections to the magistrate's decision granting HSBC's summary judgment motion.  (ECF No. 1-11, PageID #:213-216.)  In their motion for leave, the Finleys sought to introduce "newly discovered evidence" and incorrectly stated that Ms. Finley's objections to the magistrate's decision were timely.  (Id., PageID #:213.)  Otherwise, the Finleys alleged that they had received documentation from Ocwen in response their request for information under 12 C.F.R. § 1024.36 to indicate that Ocwen should have honored the December 30, 2011 loan

7

modification.    (Id., PageID #:215.)    The Finleys' motion for leave contained copies of documentation from Ocwen to indicate that it had not received from the Finleys "a hardcopy of the signed Loan Modification Agreement per the requirements of Cuyahoga County, Ohio," presumably for the purposes of recording the agreement with the county, and that the loan modification was "reversed" for this reason.  (Id., PageID #:223; *see also* ECF No. 1-13, PageID #:339.) The documentation the Finleys' attached to their motion for leave did not indicate that MDK was ever informed of such developments.

On August 11, 2017, the Finleys' motion for leave was granted, and the magistrate set a hearing for September 11, 2017.  (Fcl. Dkt.)  On August 14, 2017, the MDK attorney filed a notice of dismissal, and the foreclosure was dismissed without prejudice.  (Id.)

<u>Further Developments and MDK's Debt Validation Notice</u>

Subsequently, through their counsel, the Finleys sent correspondence to Ocwen on August 18, 2017 on which MDK was copied.  (ECF No. 1-14, PageID #:367.)  However, on October 24, 2017, Ocwen sent the Finleys an acceleration notice to indicate that the Finleys were in default on their mortgage loan and would pursue foreclosure anew.  (Id., PageID #:380.)

On November 9, 2017, MDK sent to Mr. Finley's counsel, The Dann Law Firm, a debt validation notice under Section 1692g of the FDCPA addressed to its client, Mr. Finley.  (ECF No. 1-17.)  In the debt validation notice, MDK stated that it was a "law firm retained to collect a debt" and that "[a]s of the date of this letter, no attorney at MDK has evaluated the debt."  (Id.) The letter further stated that "[a]s of the date of this letter, the amount of the debt is "134,911.11."  (Id.)

Otherwise, the letter stated the name of the creditor, HSBC, and that Mr. Finley was "entitled to thirty (30) days from your receipt of this notice to notify MDK that you dispute the validity of the debt."  (Id.)  In this regard, the letter further stated that "[i]f you notify MDK in

writing within thirty (30) days from your receipt of this notice that you dispute the debt or any portion of the debt, MDK will obtain verification of the debt and mail a copy of that verification to you."  (Id.)  The letter further stated that if Mr. Finley did "request verification of the debt . . ., MDK is require to suspend its efforts to collect the debt until MDK sends the requested information to you."  (Id.)

<u>The Finleys' Complaint in this Action</u>

However, instead of contacting MDK to dispute the debt, the Finleys' attorney filed the instant law suit on their behalf on December 8, 2017 and asserted claims against MDK under the FDCPA, as well as several claims against Ocwen and HSBC. (ECF No. 1.) As to MDK, the Finleys omit the fact that they did not oppose HSBC's summary judgment motion; did not appear at the December 5, 2016 oral hearing on HSBC's summary judgment motion; did not file a motion for leave either to oppose HSBC's summary judgment motion or to continue the summary judgment hearing; and did not file timely objections to the magistrate's decision.  (*See* ECF No. 1, ¶¶ 59-60.)

Furthermore, the Finleys falsely represent the contents of HSBC's memorandum in response to the Finleys' untimely objections by claiming that MDK alleged that the Finleys "are in default" and further that MDK "knew the allegations that it made to the Court on behalf of the plaintiff in that case were false."  (Id., ¶¶ 62 & 69.)  Not surprisingly, the Finleys do not attach a copy of HSBC's response to their objections, which does contain such allegations, and instead merely states, in pertinent part, that HSBC produced evidence to support its prima facie case for foreclosure and that the Finleys did not respond.  (Resp. Obj. Mag. Dec., attached hereto as Exhibit 5.)

Otherwise, the Finleys do not allege that MDK was a party to their counsel's communications with Ocwen after MDK dismissed the foreclosure action on August 14, 2017

and before MDK sent the debt validation notice to their counsel on November 9, 2017, three months later.  Nevertheless, the Finleys allege that MDK had falsely stated in its debt validation letter that "[a]s of the date of this letter, no attorney at MDK has evaluated the debt."  (Id., ¶ 80-81.)  The Finleys claim that this statement was false because of MDK's participation in the foreclosure proceedings but are silent as to whether MDK was privy to any developments that may have occurred between Ocwen and the Finleys for the three months after MDK dismissed the foreclosure action and before it sent its debt validation letter.  (Id., ¶ 81.)  Nevertheless, the Finleys claim that this statement was "demonstrably untrue."  (Id., ¶ 90.)   The Finleys also allege that MDK incorrectly stated the amount of their debt as $134,911.11."  (Id., ¶ 82.)

The Finleys further omit that MDK's debt validation letter was not sent to their address, but instead to the address of their attorney, The Dann Law Firm, as the letter expressly states. (ECF No. 1-17.) The Finleys do not allege that they were deceived or misled by the statements in the letter that they claim were false.

Nevertheless, the Finleys claim that they have suffered "severe emotional distress directly and proximately caused by the conduct of Ocwen and its law firm," without stating what actions MDK took to cause them such severe emotional distress other than to represent HSBC in the foreclosure action in the ordinary course and send their attorney a debt validation letter.  (Id., ¶ 91.) On the same "basis," the Finleys alleged that MDK has caused them

> to unnecessarily remain in a default or otherwise in delinquent status on the Loan and remain in foreclosure for a significantly longer time than they would have if Ocwen and its law firm had acted appropriately and with reasonable diligence in their handling of errors alleged. . . .

At the same time, the Finleys are silent both about their own delays and inaction in the foreclosure action and what they think MDK should have done as an attorney representing the opposing party other than what it did.  The Finleys even object that MDK was somehow at fault

for filing the foreclosure action in the first place, but without alleging MDK was aware of any facts to indicate that it should not have done so.  (Id., ¶ 93.)

As to their claims under the FDCPA, the Finleys allege facts to indicate that MDK was a "debt collector" under the FDCPA, that they are "consumers," and that the purpose of their mortgage loan debt was for "household purposes."  (Id., ¶¶ 144-146.)

The Finleys allege that MDK violated 15 U.S.C. § 1692e(2) for misrepresenting that Finleys "were in default, that they owed sums which were not in fact due, and that the Home would be foreclosed upon."  (Id., ¶ 148.)  However, the Finleys do not state where MDK represented that their loan was in default, other than in its response to the Finleys' objections to the magistrate decision, which contained no such statement.  (Resp. Obj. Mag. Dec., attached hereto as Exhibit 5.)  Nor do they allege where MDK represented "sums which were not in fact due" and that "the Home would be foreclosed upon."

In conclusory fashion, the Finleys allege that MDK's November 9, 2017 debt validation letter was "false and deceptive," but without stating further how and why the letter was false, and without alleging at all how the letter was deceptive.  (Id., ¶ 149.)  In particular, the Finleys do not allege how they might have been deceived by a letter that, by its express terms, invited them to dispute the debt and was sent to their attorney's office.

Otherwise, the Finleys allege that MDK "knew or had reason to know" that they were not in default and that Ocwen had made errors on their account.  (Id., ¶ 150.)  However, they did not allege any additional allegedly false, deceptive, and misleading representations MDK made.  The Finleys allege that "the Foreclosure Case had been improperly filed and maintained for over a year."  (Id.) But the Finleys make these allegations despite both that they had abandoned their defense in the foreclosure action for at least the eight months separating Ms. Finley's responsive pleading and the date of her untimely objections to the magistrate's decision and that MDK

dismissed the foreclosure shortly after the Finleys retained counsel and disclosed their communications with Ocwen from the prior March.  (Id.)

The Finleys allege that MDK violated Section 1692e(5) of the FDCPA "when it threatened to take action – the collection of amounts not due – that cannot legally be taken." (Id., ¶151.)  However, the Finleys do not allege facts to indicate that MDK made any threats whatsoever.  Furthermore, far from being a "threat" to collect amounts not due, MDK's debt validation letter is instead an express invitation from MDK to the Finleys, through their attorney, to verify the debt three months after the prior foreclosure action was dismissed. (ECF No. 1-17.) How such representations constitute a "threat," the Finleys do not say.

In conclusory fashion, the Finleys allege that MDK violated 15 U.S.C. ¶ 1692(f), which bars unfair or unconscionable means to collect a debt, merely stating that MDK's "conduct as outlined herein constitutes" such "unconscionable means."  (Id., ¶ 152.)  The Finleys draw this conclusion despite that their complaint merely contains facts to indicate that it represented HSBC in the foreclosure action in the ordinary course and sent an ordinary debt validation letter to their attorney.

Finally, the Finleys allege that MDK violated 15 U.S.C. § 1692d, which bars a debt collector from engaging in harassing and abusive conduct in collecting a debt.  (Id., ¶ 153.) However, the Finleys merely repeat their allegation that MDK employed "unfair and unconscionable means to collect the subject debt."  (Id.) The Finleys further allege that the means MDK employed to collect their debt was "the threat of an imminent foreclosure sale of the Home."  (Id.)  But the Finleys do not allege any facts to indicate MDK made any threats whatsoever, let alone one regarding "an imminent foreclosure sale of the Home."

On the basis of these allegations, the Finleys seek statutory damages under the FDCPA, actual damages, and legal fees under 15 U.S.C. § 1692k(a).  (Id., ¶ 154-155.)

**Law and Argument**

**I.      Applicable legal standards.**

**A.  The Rule 12(b)(6) standard.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

A complaint will survive a motion to dismiss if the plaintiff alleges facts that "state a claim to relief that is plausible on its face" and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Handy-Clay v. City of Memphis, Tennessee*, 695 F.3d 531, 538 (6th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). However, the complaint must thus "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Id*. (quoting *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (emphasis supplied)).

To determine whether the complaint contains a plausible basis for relief, all factual allegations are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Id*.  However, legal conclusions are not entitled to be accepted as true, nor are "unwarranted factual inferences." *Id*.  (citing *Twombly*, 550 U.S. at 555; *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  Plaintiffs are obligated to produce "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

### B.  The FDCPA standards.

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692(e).   Regarding abusive debt collection activity, Congress stated that

> [c]ollection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

*Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 398 (6th Cir. 1998) (quoting Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).

While attorney debt collectors were initially exempt from FDCPA liability, Congress repealed the exemption in 1986, and a subsequent circuit split arose as to whether the litigation activities of attorney debt collectors fell within the FDCPA.  *Penn v. Cumberland*, 883 F. Supp. 2d 581, 587 (E.D. Va. 2012) (citations omitted).  The U.S. Supreme Court resolved the split by holding that the FDCPA applies to the litigation activities of attorney debt collectors.  *Id.* (citing *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)).  However, while the Court did not expressly define what activities could subject attorney debt collectors to FDCPA liability, the Court nevertheless has made it clear that the FDCPA "should not be assumed to compel absurd results when applied to debt collecting attorneys." *Id.* (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S.Ct. 1605, 1622 (2010)).

The mere filing of a debt collection lawsuit does not subject an attorney debt collector to liability under the FDCPA.  *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016,

1022 (S.D. Ohio 2007) (citing *Deere v. Javitch, Block & Rathbone*, 413 F. Supp. 2d 886, 890-891 (S.D. Ohio 2006)).  Nor does the FDCPA impose a duty on an attorney debt collector to investigate the validity of a creditor's claim before it files a civil action against the consumer. *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006) (stating that FDCPA does not impose upon a debt collector any duty to independently investigate the claims of a creditor); *Hyman v. Tate*, 362 F.3d 965, 967 (7th Cir. 2004) (stating that debt collector is not required to independently verify that accountholders referred for collections are not in bankruptcy).  Instead, attorney debt collectors violate the FDCPA when taking egregious action, such as filing a debt collection lawsuit knowing that the plaintiff cannot prove it owns the debt, or attaching a false affidavit to a pleading.  *Williams*, 480 F. Supp. 2d at 1022; *Delawder v. Platinum Financial Services Corp.*, 443 F. Supp. 2d 942, 947 (S.D. Ohio 2005).

To state a claim for relief under the FDCPA, the plaintiff must allege sufficient facts to support the following material elements:  (i) the plaintiff is a "consumer" under the FDCPA; (ii) the "debt" arises out of a transaction for "primarily . . . personal, family or household purposes"; (iii) the defendant is a "debt collector" under the FDCPA; and (iv) the defendant violated the FDCPA's prohibitions against specific forms of "debt collection communication and/or activity." *Wallace v. Wash. Mut. Bank*, 683 F.3d 323, 326 (6th Cir. 2012); *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009).

### A.  The Finleys do not allege facts to indicate that MDK engaged in harassing or abusive conduct under 15 U.S.C. § 1692d.

Section 1692d ("Harassment or abuse") prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Section 1692d further contains a

non-exhaustive list of behavior that is prohibited, including "[t]he use or threat of use of violence," "the use of obscene or profane language . . . to abuse the hearer or reader," and certain forms of telephone harassment.  Id., § 1692d(1), (2) & (5).

Under Sixth Circuit case law, the debt collector's actions must intend to "embarrass, upset, or frighten a debtor" and to cause "suffering and anguish" before they constitute a violation of Section 1692d.  *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006).  Merely filing a debt collection lawsuit does not rise to the level of a Section 1692d violation, "which is an authorized method of collecting a debt."  *Id.*

The Finleys do not allege that MDK engaged in any harassing or abusive behavior of any kind.  Instead, they merely allege that MDK filed a debt collection lawsuit against them in which the court magistrate painstakingly informed Ms. Finley of her due process rights, even to the point of instructing her how to oppose HSBC's summary judgment motion, despite that she ignored the magistrate and abandoned her foreclosure defenses until the magistrate had no choice but to issue a decision granting HSBC's summary judgment motion. Otherwise, MDK merely pointed out the obvious procedural facts of the foreclosure action in its response to the Finleys' belated objections to the magistrate decision. Finally, the complaint merely indicates that MDK sent a debt validation notice to the Finleys' attorney under 15 U.S.C. § 1692g, inviting the Finleys to dispute the debt, instead of engaging in any abusive or harassing tactics whatsoever. None of the allegations in the Finleys' complaint constitute a violation of Section 1692d.

**B. The Finleys do not allege facts to indicate that MDK made any materially false, deceptive, or misleading representations to them.**

Under 15 U.S.C. § 1692e, the FDCPA bars a debt collector from making false, deceptive, or misleading representations when attempting to collect a debt.  *Wallace*, 683 F.3d at 326.  As with Section 1692d, Section 1692e includes a non-exhaustive list of ways in which a debt

16

collector may violate Section 1692e, two of which the Finleys expressly rely on—Section 1692e(2)(A), which bars a debt collector from falsely representing "the character, amount, or legal status of any debt"; and Section 1692e(5), which bars a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

However, not just any false, deceptive, or misleading representations constitute a violation of Section 1692e. Instead, the debt collector's representation must be "materially" false, deceptive, or misleading. *Forgues v. Select Portfolio Servicing, Inc.*, 690 Fed. Appx. 896, 900 (6th Cir. 2017) (quoting *Duffey v. Nationstar Mtge.*, 614 Fed. Appx. 330, 334 (6th Cir. 2015).) This means that any representation must not only be false but one that "would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.*, at 900 (quoting *Wallace*, 683 F.3d at 326-7.) "In applying this standard, courts are not concerned with 'mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.'" *Miller v. Prompt Recovery Servs.*, No. 5:11CV2292, 2013 WL 3200659, 2013 U.S. Dist. LEXIS 88203, at *28 (N.D. Ohio June 24, 2013) (citing *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010).)

Furthermore, when a debt collector makes a representation to a debtor's attorney, a different standard applies from the least sophisticated consumer standard, specifically the "competent lawyer" standard. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) (stating that, with regard to Sections 1692e and 1692g of the FDCPA, "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable"); *accord Polinsky v. Cmty. Health Partners Regional Health Systems*, 858 F. Supp.2d 891, 899 (N.D. Ohio 2012).

17

As with their claim under Section 1692d, the Finleys' claim under Section 1692e(5) fails because the Finleys do not identify any threat MDK made against them whatsoever, regardless of its legality or of MDK's intentions.  For this simple reason, the Finleys' Section 1692e(5) claim should be dismissed.

The Finleys devote the great majority of their claim under Section 1692e(2)(A) to MDK's statement, in its debt validation notice, that as of the date of the letter, no attorney at MDK had evaluated the debt. However, even if the least sophisticated consumer standard applied, which it does not because MDK sent the validation notice to the Finleys' attorney, the representation is neither false nor materially so.  First, three months had passed between the date that MDK dismissed the foreclosure and the date it sent its debt validation letter to the Finleys' counsel. By that point, MDK's statement that no attorney had evaluated the debt was true because it was not privy to all of Ocwen's communications with the Finleys and any other developments that had occurred with respect to the debt during that time.  At any rate, as a matter of law, MDK is entitled to rely on information from its client to state the amount of the debt and is not under an obligation to investigate the validity of the debt in advance, particularly in the context of a debt validation letter under Section 1692g of the FDCPA.  *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp.2d 913, 921 (N.D. Ohio 2011) (dismissing debtor's claim against debt collection law firm under Section 1692e(2)(A) for allegedly stating incorrect debt amount in debt validation letter under Section 1692g where the "purpose of [Section 1692g] is to put the consumer on notice as to the amount sought by the debt collector so the consumer can pay it, or seek verification if the amount is disputed") (citation and internal quotations omitted).

Furthermore, even if the statement were false, it was not materially so because it would not prevent the least sophisticated consumer from making an intelligent decision with respect to the debt. This is particularly true in the context of a debt validation letter that invites the debtor

to dispute the debt and, if so, promises the debtor that the debt collector will seek verification of the debt's validity and delay attempts to collect the debt, consistent with the requirements of Section 1692g of the FDCPA.  *See* 15 U.S.C. § 1692g(a)-(b). As result, any such misrepresentation could not have been material.   The same is true of MDK's representation as to the amount of the debt, which itself was in dispute and had yet to be decided. *See Sexton v. Bank of New York Mellon*, No. 5:15-329, DCR, 2016 U.S. Dist. LEXIS 59026, at *19 (E.D. Ky. May 4, 2016) (dismissing claim against debt collection law firm under Section 1692e(2)(A) where debt collector's alleged false representation of debt amount in debt validation letter was not "materially false" on grounds that "it spells out a procedure for disputing the debt"). Again, the debtors were invited to dispute the debt, and MDK promised to verify its validity and delay collection efforts.  Certainly, the Finleys do not allege that they were misled or confused by MDK's debt validation letter.  *See Galati v. Manley Deas Kochalski LLC*, No. 1:13-CV-2206, 2014 U.S. Dist. LEXIS 17772, 2014 WL 584784, at *4 (N.D. Ohio Feb. 12, 2014) (Polster, J.) (granting debt collector law firm's Rule 12(b)(6) where debtors' claim under Section 1692e was not supported by the allegations that the debtors' were confused by the firm's representations).

But the Finleys' claim under Section 1692e(2)(A) fails for another reason, specifically that no competent lawyer would be deceived or misled by the debt validation notice. A competent lawyer would know that the letter was a debt validation notice under Section 1692g and would presumably send a letter to MDK disputing the debt to trigger the debtor's debt validation rights and MDK's duty to verify the debt and delay collection efforts.  As the Seventh Circuit determined in *Evory*, a competent lawyer "would not have to be an expert on the Fair Debt Collections Practices Act to be able to look it up and discover what information sections 1692g(a)(3)-(5) require to be disclosed to the consumer, and then compare the requirements with

the content of the communication that he has received on his client's behalf." *Evory*, 505 F.3d at 775. For yet another reason, the Finleys claim under Section 1692e fails.

Otherwise, the Finleys allege that MDK violated Section 1692e with respect to its response to Ms. Finley's objections to the magistrate's decision, but without indicating what statements were materially false, deceptive, or misleading, and without attaching a copy of the response to Ms. Finleys' objections that MDK filed on HSBC's behalf. The Finleys failure to attach the response is telling because the response sticks to the indisputable procedural facts of the foreclosure action, in which the Finleys failed to oppose HSBC's summary judgment motion, even after the magistrate expressly informed them how to do it.

Accordingly, the Finleys have not alleged that MDK made a materially false, deceptive, or misleading representation to them, and their claims under Section 1692e should be dismissed.

### C.  The Finleys do not allege facts to indicate that MDK engaged in any unfair or unconscionable behavior toward them under 15 U.S.C. § 1692f.

Section 1692f of the FDCPA bars a debt collector from engaging in "unfair or unconscionable" means to collect a debt.  Again, Section 1692f provides a list of nonexclusive debt collector behavior that violates Section 1692f, such as collecting amounts not authorized by the debt agreement, soliciting post-dated checks from consumers, and communicating with consumers via post card regarding a debt.  15 U.S.C. § 1692f(1), (3) & (8).  *See Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534 (6th Cir. 2014).

The Finleys do not allege any facts to indicate that MDK utilized "unfair or unconscionable means" to attempt to collect their debt, most obviously because they allege that MDK utilized ordinary judicial process to do so. For this reason, the Finleys were afforded due process, as the court magistrate expressly informed them, and every opportunity to challenge the validity of the foreclosure action. Instead, Mr. Finley did not bother to respond to the complaint

20

at all, and while Ms. Finley filed a responsive pleading and appeared at an oral hearing on HSBC's motion for default judgment against her husband, she filed nothing in the foreclosure action for the eight months between the date she filed her responsive pleading and the date that she filed untimely objections to the magistrate's decision.

Under such circumstances, the FDCPA does not require MDK to abandon its representation of HSBC to dismiss the foreclosure complaint merely at the prospect that its client may not have a meritorious complaint. This is especially true when borrowers, like the Finleys, who have filed bankruptcy and repeatedly defaulted under the note and mortgage, challenge its client in such an inconsistent and perplexing manner. However, of course, MDK did dismiss the action, consistent with the recommendation of the magistrate, further denying the Finleys' claim.

**II.      Conclusion**

For the foregoing reasons, the Finleys' FDCPA claims against Manley Deas should be dismissed for failure to state a claim under Rule 12(b)(6).


Respectfully submitted,

/s/ Matthew J. Richardson
Matthew J. Richardson
Manley Deas Kochalski LLC
P. O. Box 165028
Columbus, OH  43216-5028
Telephone:  614-222-4921
Fax:  614-220-5613
Email:  mjr2@manleydeas.com
*Attorney for Defendant Manley Deas*
*Kochalski LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Motion to Dismiss Complaint was served via the Court's Electronic Filing System on all parties and counsel of record on the following date.

/s/ Matthew J. Richardson
Matthew J. Richardson

January 25, 2018
Dated

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this action is a standard and unassigned case and that the foregoing brief complies with the page limitation for memoranda relating to dispositive motions in such cases.

/s/ Matthew J. Richardson
Matthew J. Richardson

January 25, 2018
Date
