UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BRIAN FINLEY, et al.** | ) | CASE NO. 1:17-CV-02561 |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| v. | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **OCWEN LOAN SERVICING, LLC,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before the Court is Defendant Manley Deas Kochalski LLC's ("MDK") Partial Motion to Dismiss Plaintiffs' Fair Debt Collections Practices Act claims under Federal Rules of Civil Procedure 12(b)(6). Doc #: 16. Plaintiffs filed a Response, Doc #: 18, and MDK filed a Reply. Doc #: 20. For the following reasons, the Motion is **GRANTED** in part and **DENIED** in part.

**I.     Background**

On December 8, 2017, Plaintiffs Brian Finley and Jessica Finley ("the Finleys") filed this lawsuit against Defendants (1) MDK; (2) HSBC Bank USA, N.A. ("HSBC"); and (3) Ocwen Loan Servicing, LLC ("Ocwen"). Doc #: 1. In their Complaint, the Finleys assert claims of breach of contract and violations of 12 C.F.R. § 1024.35(e), the Truth in Lending Act, 12 C.F.R. § 1026.41, 28 U.S.C. § 2201(a), Ohio Rev. Code § 5303.01, the Fair Debt Collection Practices

1

Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345, *et seq.*

This action stems from a bankruptcy case, filed by the Finleys, on April 13, 2010. Compl. ¶ 26. Throughout the course of their bankruptcy case, the Finleys sought to modify their mortgage to make their home payments more affordable. Compl. ¶ 30. Ocwen, who was responsible for servicing the loan, agreed to modify the Finleys' loan pursuant to a written Loan Modification Agreement ("LMA" or "2011 LMA"). Compl. ¶ 31. The bankruptcy court granted an order approving the LMA on June 13, 2012. Compl. ¶ 33. Despite this order, Ocwen continually disregarded the LMA and sought to collect on amounts that were not due. Compl. ¶ 47-51. In response to Ocwen's failure to comply with the LMA, the bankruptcy court conducted a hearing and granted the Finleys' Motion to Enforce the 2011 LMA on September 24, 2012. Compl. ¶ 33. Despite the bankruptcy court's order, Ocwen continued to disregard the 2011 LMA. *Id.* The Finleys allege that they have made all payments in correspondence with the terms set forth by the LMA. Compl. ¶ 50.

On April 1, 2016, MDK filed a foreclosure action on behalf of HSBC, in the Cuyahoga County Court of Common Pleas, alleging that the Finleys had defaulted on their loan. Compl. ¶ 55. Plaintiffs allege that this default was due to Ocwen's failure to abide with the 2011 LMA's terms. Compl. ¶ 53. In response to MDK filing suit, the Finleys filed an answer, pro se, in which they denied defaulting on their loan, specifically raising the LMA and its terms. Compl. ¶ 57-58. Amidst the foreclosure proceedings, the Finleys contacted the Consumer Financial Protection Bureau ("CFPB") for help with their loan and Ocwen's failure to comply with the 2011 LMA. Compl. ¶ 64-65. After the CFPB got involved, Ocwen finally submitted a

2

response to the Finleys, dated March 31, 2017, which recognized and effectuated the 2011 LMA. Compl. ¶ 66-68. In its response, Ocwen stated that it would retroactively apply the 2011 LMA's terms to all payments since the 2011 bankruptcy court's court order. Compl. ¶ 67-68. Despite this, MDK maintained the foreclosure action. Compl. ¶ 68. On July 7, 2017, the Finleys retained counsel out of the fear of losing their home. Compl. ¶ 70. Shortly thereafter, MDK filed to voluntarily dismiss the foreclosure action. Compl. ¶ 72. The Cuyahoga County Court of Common Pleas granted MDK's request and dismissed the case, without prejudice, on August 22, 2017. *Id.*

On November 9, 2017, less than three months after the dismissal of the foreclosure action, MDK sent the Finleys a debt validation letter ("validation letter"). Compl. ¶ 79. The validation letter misrepresented the character amount and legal status of the Finleys' outstanding debt. Compl. ¶ 148. In addition, the letter stated that "MDK is not required to wait until the end of the thirty (30) day period . . . before filing a foreclosure action in court or taking other legal action to collect the debt." and that "no attorney at MDK has evaluated [the Finleys'] debt." Compl. Ex Q.

Confused by this letter, and out of the continued fear of losing their home, the Finleys brought suit under the FDCPA to reconcile their reoccurring debt issues.

## II. Standard of Review

To survive a 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Id.* at 555. Although Rule 12(b)(6) does not impose a

3

probability requirement at the pleading stage, a plaintiff must present enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (internal quotation marks omitted). The Court must accept as true all well-pled material allegations in the complaint and "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.     Analysis

The Finleys advance four claims under the FDCPA against MDK. The Finleys allege that MDK violated the FDCPA by filing the 2016 foreclosure action and sending the debt validation letter to the Finleys' attorney. The FDCPA was enacted in order to eliminate "the use of abusive, deceptive, and unfair debt collection practices by . . . debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. §§ 1692a, 1692e. To accomplish this purpose, the FDCPA should be construed broadly. *Stratton v. Portfolio Recovery Assoc. LLC*, 770 F.3d 443, 448 (6th Cir. 2014). MDK moved to dismiss all four FDCPA claims so the Court will address each in turn.

### A.     § 1692d

Title 15 U.S.C. § 1692d bars a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The Sixth Circuit has explained the types of conduct that § 1692d proscribes:

> Although nonexhaustive, the examples of oppressive conduct listed in § 1692d concern tactics intended to embarrass, upset, or frighten a debtor. They are likely to cause the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have.

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006).

The Finleys argue that MDK violated § 1692d when it: (1) maintained the 2016 foreclosure action despite the 2011 LMA; (2) maintained the foreclosure action until the Finleys' retained counsel; and (3) threatened a foreclosure action in its November 9, 2017 debt validation letter. MDK argues that the Finleys' § 1692d claim should be dismissed because they do not allege any facts that indicate abuse or harassment. MDK further argues that the filing of a debt collection lawsuit does not rise to the standards established under § 1692d. When construing the FDCPA broadly, as this Court is required to do, the Court concludes that MDK's conduct qualifies as harassment or abuse.

First, the Finleys allege sufficient facts to show that MDK harassed or abused them by maintaining the foreclosure action after both the bankruptcy judge and Ocwen recognized the 2011 LMA's validity. The bankruptcy court determined that the 2011 LMA was a valid agreement. Additionally, Ocwen sent a personal letter to the Finleys, after investigating the 2011 LMA, verifying that the basis for its foreclosure case was inaccurate. Furthermore, MDK maintained the foreclosure action, despite Ocwen recognizing the LMA's legitimacy, until after the Finleys retained counsel. The foreclosure action was filed on April 1, 2016 but MDK did not move to dismiss the foreclosure suit until August 14, 2017, more than one year later. These are facts which, if proven, show conduct that qualifies as "frightening" or "upsetting" behavior and gives rise to suffering or anguish. MDK should have known about the 2011 LMA before it filed the foreclosure action. And it should have known that Ocwen recognized the 2011 LMA in March 2017. Yet MDK filed the foreclosure action and put the Finleys in fear that they would lose their home over debt they did not owe.

5

The Finleys also allege that MDK's November 9, 2017 debt validation letter constitutes a violation of § 1692d. The Finleys argue that the letter threatens an imminent foreclosure of their home. In part, MDK's letter states, "*MDK is not required to wait until the end of the thirty (30) day periods, described above before filing a foreclosure action* in court or taking other legal action to collect the debt." (emphasis added). So, nearly 8 months after Ocwen changed its tune and recognized the 2011 LMA, MDK was still sending threatening letters to the Finleys to collect on debt that was not owed. This Court finds that such language would lead homeowners to believe they were at risk of imminent foreclosure. Thus, the Court cannot dismiss the Finleys's § 1692d claim.

**B.** **§ 1692e**

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e then provides a non-exhaustive list of the types of conduct that would be in violation of the statute. Here, § 1692e(2) and § 1692e(5) are relevant.

**i.** **§ 1692e(2)**

The Finleys allege that MDK violated § 1692e(2)(A), which states that a debt collector is in violation of the statute when it falsely represents "the character, amount, or legal status of any debt[.]" When determining whether a debt collector's actions are false, deceptive, or misleading, courts are to consider whether "the 'least sophisticated consumer' would be misled by defendant's actions." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 236 (6th Cir. 2012) (internal citations omitted). "The basic purpose of [this] . . . standard is to ensure that the

FDCPA protects all consumers, the gullible as well as the shrewd." *Federal Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 509-10 (6th Cir. 2007). This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Id.* When applying this standard, courts are also to consider whether the debt collector has made any "materially false or misleading" statements. *Id.* "The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace*, 693 F.3d at 326.

The Finleys allege that MDK violated § 1692e(2)(A), when it sent the November 9, 2017 debt validation letter, stating that the Finleys owed a debt totaling $134,911.11. The Finleys assert that the validation letter misrepresents the character and amount of their outstanding debt. Further, the Finleys assert that MDK knew, or should have known, that the debt amount stated in its letter was inaccurate because of MDK's involvement in the 2016 foreclosure suit. In its Motion, MDK disputes this claim on two grounds. MDK contends that three months had passed since the foreclosure action, and by that point, MDK "was not privy to all of Ocwen's communications with the Finleys and any other developments that had occurred with respect the debt." Expanding on this, MDK argues that it was not required to investigate the Finleys's debt amount and that the purported debt amount was not materially false because the validation letter provided a method for the Finleys to contest the debt-amount in question.

In support of its first point, MDK largely relies on *Michael v. Javitch Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 921 (N.D. Ohio Nov. 15, 2011). In *Michael*, a consumer filed suit under the FDCPA when a debt collector sent a debt validation letter that incorrectly stated the consumer's debt amount. *Id.* at 916-917. When dismissing the § 1692e(2) claim, the *Michael*

7

court held that the "purpose [of a validation letter] is to put the consumer on notice as to the amount sought by the debt collector so the consumer can pay it, or seek verification if the amount is disputed." *Id.* The *Michael* court further held that "[a debt collector] may rely upon the representations of its client in sending Plaintiff [a] validation notice." *Id.* MDK argues that the purpose of its validation letter was simply to establish that the Finleys owed a debt and that MDK was seeking to collect on this debt. In addition, MDK further argues that it was not privy to any conversations that occurred between Ocwen and the Finleys after the dismissal of the 2016 foreclosure action, nor did they have a duty to investigate the current status of the Finleys's debt.

While MDK may be correct, this is an issue of fact that cannot be resolved on a motion to dismiss. The Finleys have alleged facts which, if proven, show that MDK was aware, or should have been aware of the LMA long before MDK sent its validation letter. In fact, three months had passed from when the 2016 foreclosure suit was dismissed in August 14, 2017, to when MDK sent its validation letter on November 9th, 2017. In its validation letter, MDK states that, "As of the date of this letter, *no attorney* at MDK has evaluated the debt." (emphasis added). While, as the court stated in *Michael*, a debt collecting firm may not generally have a responsibility to investigate a consumer's debt before sending a validation letter, this Court finds that a trier of fact could conclude that MDK and its attorneys knew, had reason to know, or at least had knowledge of facts requiring further investigation at the time it sent the validation letter to the Finleys. Because of MDK's involvement with the foreclosure action, which lasted well over a year and a half, a trier of fact could conclude that MDK was "required to accurately state the amount of the debt" that it was asked to collect and did not do so. *Michael*, 825 F. Supp. 2d at 921 (citing *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 646-47 (7th Cir. 2009). When

construing the facts in the light most favorable to the Plaintiffs, the "least sophisticated consumer" could have been misled by MDK's validation letter and feared for losing his home. Because of this, this Court finds that sufficient questions of fact exist, making the granting of MDK's Motion on these grounds improper.

MDK further argues that this Court should dismiss the Finleys's § 1692e(2) claim on the grounds that the "least sophisticated consumer" standard does not apply because MDK sent the validation letter to the Finleys's counsel. Instead, MDK asks the Court to adopt the "competent lawyer" standard – a standard that has not been formally adopted by the Sixth Circuit. *See Evory v. RJM Acquisitions Funding, L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) ("[A] representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable."); *Hagy v. Demers & Adams, LLC*, 882 F.3d 616, 620 (6th Cir. 2018) ("We have yet to take a position [on the competent lawyer standard], and our stand on the issue will have to wait"). This Court does not see a need to consider the competent lawyer standard because it would still need to resolve a question of fact to determine whether MDK misrepresented the debt amount in question. *See Hagy v. Demers & Adams, LLC*, No. 2:1-cv-530, 2011 WL 6091797, *9 (S.D. Ohio Dec. 7, 2011) ("If [defendant] made a false statement, then it is plausible under either [standard] that such a communication would constitute conduct that violated §§ 1692d, 1692e, and 1692f."). The Court cannot resolve issues of fact on a motion to dismiss. As such, the Court cannot dismiss Plaintiffs' § 1692e(2) claim.

### ii. § 1692e(5)

Title 15 U.S.C. § 1692e(5) prohibits a debt collector from making "threat[s] to take any action that cannot legally be taken or that is not intended to be taken." The Finleys allege that

MDK violated § 1692e(5) when it threatened to collect amounts not due, and when MDK knew that legal action could not be taken because the 2011 LMA constituted a valid defense to the foreclosure proceedings. In response, MDK argues that no facts in the Finleys's Complaint, nor Response, demonstrate that MDK threatened the Finleys. As stated herein, this Court finds that sufficient issues of material fact exist throughout the Finleys's Complaint, rendering dismissal inappropriate at this phase. As such, the Court cannot dismiss Plaintiffs' § 1692e(5) claim.

**C.    § 1692f**

Title 15 U.S.C. § 1692f bars a debt collector from engaging in "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692f then proceeds to "set[] forth a non-exhaustive list of conduct that rises to that level." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534 (6th Cir. 2014). The FDCPA prohibits debt collectors from attempting to collect any amount that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). "Section 1692f is 'intended to cover actionable debt collection practices that may not be expressly addressed' in other sections." *Sexton v. Bank of New York Mellon*, No. 5:15-329-DCR, 2016 WL 4059186, *8 (E.D. Ky Jul. 28.2016) (citing *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 2013 (S.D. Ohio Mar. 22, 2007)). Thus, a § 1692f claim fails when a plaintiff does not identify "conduct that would not be covered by a different FDCPA provision." *See Sexton*, No. 5:15-329-DCR, 2016 WL 4059186, at *8 (granting defendant's motion to dismiss a § 1692f claim because the conduct in question was covered by 15 U.S.C. § 1692e); *see also Newton v. Portfolio Recovery Assoc., LLC*, No. 2:12-cv-698, 2014 WL 340414, *10 (S.D. Ohio Jan. 30, 2014) ("[A] § 1692f claim fails [when] Plaintiff has not identified any conduct that would not be covered by a different FDCPA

10

provision. Section 1692f 'serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e.'") (internal citations omitted).

The Finleys allege that MDK violated § 1692f by stating an incorrect debt amount in their validation letter and by "[doing] more than merely utiliz[ing] the ordinary judicial process to attempt to collect from Plaintiffs." However, as discussed above, both of these purported actions are covered by other sections of the FDCPA. The Finleys do not introduce any new or additional reasons as to why a § 1692f claim would be appropriate here. Accordingly, the Court dismisses Plaintiff's § 1692f claim.

**IV.    Conclusion**

For the foregoing reasons, the Court **DENIES** MDK's Motion to Dismiss Plaintiffs' 15 U.S.C. §§ 1692d, 1692e(2), and 1692e(5) claims and **GRANTS** MDK's Motion to Dismiss Plaintiffs' 15 U.S.C. § 1692f claim.

**IT IS SO ORDERED.**

*/s/ Dan A. Polster    Apr. 9, 2018*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**